May it please the Court, Davina Chan on behalf of Thomas Kuzma, I'm going to try to reserve five minutes for rebuttal. The government has conceded that one of the counts must be dismissed based on a double jeopardy violation, so I plan to focus today on the arguments that would require dismissal or reversal of both counts, and those are the arguments that center around the definition of machine gun. Do you agree that on the double jeopardy issue we should leave it to the district court to determine which count, or do you have a position on which one should be dismissed? Of course, I would prefer that you dismiss the harder count for me. However, I do think that the Ninth Circuit rule is that it should be remanded to the district court for the district court to determine. So Thomas Kuzma was the designated responsible person for a Federal firearms license holder which held a Class VII manufacturing license. As such, it's undisputed that he was authorized to manufacture and sell Uzi parts kits and to manufacture and sell machine gun bolts. The question in this case is when he directed someone to remove a bolt blocking bar from a shop tool receiver to permit him to manually insert a sample machine gun bolt to determine whether it would safely extract the cartridge, whether that action converted the shop tool receiver into a machine gun and rendered his conduct criminal. At trial, the government's expert, the ATF Firearms Enforcement Officer testified that the removal of the bolt blocking bar itself rendered this item a machine gun because it was the receiver of a weapon that was designed to shoot automatically. This appeal raises four separate issues with respect to that contention. Turning first to the question of whether the statute is unconstitutionally vague, a criminal statute is unconstitutional if it is not sufficiently definite that ordinary people can understand what conduct is prohibited or if it encourages arbitrary enforcement. The record in this case shows that the definition that they purported to use in this case fails both of these tests. Now, the only clause you're challenging in the statute as unconstitutionally vague is the design to shoot clause, is that correct? That's correct. Okay. But it was also charged and in the jury instructions as shoots. Yes. And the evidence that the government offered showed that when you took the frame of receiver and added the parts, it did shoot. So why do we even need to reach the issue of the other clause when the shoots clause applies? I don't believe the shoots clause applies and let me explain why. So first of all, clearly government's exhibit 12 did not shoot. It was a receiver. So it didn't shoot anything. Right. But the statute says the frame or receiver of such a weapon and then you go up to the types of weapons and one of them is shoots. Right. Correct. So if it's a frame or receiver and you want to know whether it's the frame or receiver of a weapon that shoots, you add the remaining parts to make it into an operable weapon and then see if it shoots and that it did so here. Well, I want to be really clear that you're correct. It says which shoots. It did not say which will shoot and that really distinguishes this definition from the definition of a firearm which is — which will expel a projectile or which is designed to expel a projectile or which is readily restored to — so it uses the term will. This statute does not use the term will. And as the ATF agent in this case interpreted it, this was not a receiver of a firearm that shoots. It was the receiver of a firearm that would shoot. Now, if — if the Court were correct that this firearm was a machine gun because when you put all the other stuff on it, it shot, then Defense Exhibit 145 would also be a machine gun. So Defense Exhibit 145 was the firearm, the stamper, without anything attached to it. And the testimony in this case was that was not a machine gun because it didn't have the bolt-blocking bar. But it wasn't a receiver. It was a receiver. Well, the testimony of the government expert is that it wasn't a receiver because it was missing certain features that are essential to make it a receiver. Actually, testimony was that it was a receiver. And that's at — I think it's ER 422, 423. The testimony was that item was a firearm and it was a receiver. It just wasn't the receiver of a weapon that — that was designed to shoot automatically. So I think it was actually — I was looking at this last night. Quite interesting to read the testimony about what was the difference between Governments Exhibit 12 and Defense Exhibit 145. And that's at — I'm sorry, I have the wrong one. Exits of Record 421 through 423. So they talk about Defense Exhibit 145. And he says it's not a weapon that shoots. It's not designed to shoot. It can't be readily restored to shoot. Right? And then this particular item had already been classified by the ATF as a firearm because it was a receiver. So it was a firearm and it was a receiver. It just wasn't a machine gun receiver. If Governments Exhibit 12 was a machine gun that shot, then Defense Exhibit 145 was equally a machine gun that was shot because each one of them, if fully assembled, would, in fact, shoot automatically. But even setting that aside, if, in fact, in this particular case, the ATF agent did not rely on that portion of the definition. He relied on the designed portion. So even if a jury could, on its own, have determined that this item was, in fact, a machine gun under a different definition, there would still be a problem of the vagueness of the portion of the statute on which the government purported to rely, the instruction, and the testimony, because all three of those things went to the designed portion of the statute. In the ATF expert's report itself, he relied only on the designed portion of the statute. So in excerpts of records 17, 19, 21, 33, and 35, in all of these sections, the ATF expert was very clear and very careful to testify that this item was a receiver of a firearm which is designed to shoot automatically, not which shoots automatically, because there was absolutely no evidence that the receiver had ever been part of a weapon at all, much less one that shot or shot automatically. But the statute covers certain types of weapons, but then it also says the frame or receiver of such a weapon. So is it your position that the shoots clause never applies to a frame or receiver that's not by itself operable? No. If there had been any evidence that this had ever been part of a weapon that shot, then yes, it would apply. Isn't that kind of the restored clause? The restored clause is if when something has happened to it. So it at some point could shoot automatically, but now it can't be shoot — can't shoot automatically, but it could be restored to shoot automatically. The shoots automatically speaks in the present tense, not the future tense. And I would ask the court to look at the definition of firearm, which is at 18 U.S.C. 921A3. There's a — But a frame or receiver that's missing the remaining parts isn't going to shoot. And so if the statute includes less than a full operable firearm, it includes a frame or receiver, it's not going to shoot. And — but then if you add the remaining parts and then it shoots and it shoots automatically, why doesn't that fit the text? Because the text does not say which will shoot automatically. There are two portions of the record that I think make this quite clear. One of them is at ER 56. And this is the ATF's explanation as to why defense exhibit 145 was a firearm. And a receiver, but not a machine gun. I looked at the page you cited, 422, and I do not see where he says that 145 was a receiver. And I apologize. It's actually — He says it's missing the trunnion. And I thought that the trunnion was part of what made it a receiver. If we look at defense — ER 56, and this is about the Model A receiver, which is what government's exhibit — defense exhibit 145 was. It says that it is a firearm. So it is a firearm as defined at 18 U.S.C. 921A3. Now, of course, this receiver stamping isn't actually a firearm. It's the receiver of a firearm. And under this definition, the receiver of a firearm is a firearm. So the ATF believes that the stamping itself is a firearm. And then it says — No, I know it says that it's a firearm, but I thought their position was that the stamping alone is not a receiver, correct? No, that's not their position. In fact, their position is that the stamping alone is a receiver. It's just a semi-automatic receiver, not an automatic receiver. Here do they say that a stamping alone is a receiver? I believe it's in the testimony, but it's most clearly stated at ER 56, which says that this item, the Model A stamping — The ER 56 is the letter? Yes. Is this the second letter? This is the second letter. So this is the second letter which says that this stamping is — It doesn't say it's a receiver. The fourth bullet says that if assembled into a complete Uzi receiver — If you look at the top — By the installation of the backplate, barrel trunnion, and other receiver components, then it would be, but that seems to say that it's not currently a receiver. It says right here, since the receiver — so this starts at ER 55. Since the receiver stamping you submitted is virtually identical to the group industry stamping, being dimensionally correct, and allowing for installation of Uzi parts, it is a firearm as defined as 18 U.S.C. 921A3. And if you look at the definition of firearm, a firearm is a weapon which will project a — will expel a projectile, et cetera, or the receiver of such a firearm. I agree with you that that firearm sentence makes no sense. But on the next page, precisely for the reason you say, it doesn't seem to fit the definition of firearm. But on the next page, what they say clearly seems not to say it's a receiver. I don't — I don't mean that this makes no sense. I think, actually, that it makes perfect sense because the definition of firearm also includes the frame or receiver of the weapon. Right. Right. So because this is the frame or receiver of a firearm, it is, in fact, a firearm. So the ATF believes that that item is, in fact, a firearm. It is, in fact, the receiver of a firearm. It's just a semi-automatic receiver, not an automatic receiver. And if that's the case, and they say it very clearly, Exhibit 1 is not readily restorable to shoot automatically and does not in its present condition. In other words, they go through the definition of machine gun in the second bullet point. And there would be no reason to do that at all if they thought it wasn't a receiver at all. They go through the fact that it doesn't possess the design features of a machine gun. It's not readily restorable to shoot automatically. And it does not in its present condition shoot automatically. In other words, they believe it's a receiver. They just believe that it is a semi-automatic receiver and not an automatic receiver. Let's focus on the phrase now, designed to shoot.  Isn't your issue really not one of vagueness, but of the proper interpretation of the phrase that you think its best meaning is different from the one that was included in the instruction? Yes. That is another one of my arguments. And I do believe that the government actually seems to agree that designed should mean designed by the person who designed it, not some sort of objective test. And if that test were applied in this case, the evidence was not sufficient. There was absolutely no evidence that Mr. Kuzma designed this item to be part of a weapon which shot automatically. I see I only have one minute left, and I had intended to reserve five. If I could reserve the one minute for rebuttal. That's fine. Thank you. Good morning, Your Honors. May it please the Court. Angela Woolridge appearing on behalf of the United States. So focusing on this definition of, as the government has stated, both at trial and in its brief consistently, that this firearm, this machine gun possessed by the defendant met this statutory definition of machine gun in two ways, that it was designed to shoot and that it did in fact shoot or was the receiver of a weapon that did in fact shoot more than one projectile with one function of the trigger pull. The defendant mischaracterizes, I believe, Officer Swift's testimony, who specifically stated that he tested that receiver with applicable machine gun parts and it did in fact shoot as a machine gun. So to say that the government focused only on the designed by portion is contrary to the actual evidence at trial. How do you read his testimony about distinguishing Exhibit 145 from Exhibit 12? Your Honor, Exhibit 145 was a receiver stamping. The letter, the 2005 letter said that consistently. It consistently talked about why it was not a full receiver and Officer Swift testified consistently with that. He in fact, he talked about the parts that were missing from Exhibit 145. The defect, why 145 doesn't fit is because it's not a receiver. Correct. It is not a completed receiver. Why does the 2005 second letter say that it's a firearm? Because that doesn't seem to make any sense if it's not a receiver. Your Honor, I am not sure, but it is, that is actually a different definition. That is, and it's found in a different part of the code. Yes, but when you turn to it and you look at what words are there, the fact that it's not a receiver, there seems to be no other place to fit it in and make it a firearm. So it is puzzling, as counsel says, why it's called a firearm in that letter. I lack the expertise of understanding why it might or might not be a firearm in that regard, but even if we accept as erroneous the classification of 145 as a firearm, that has no effect on Exhibit 12, which is the actual machine gun in this case. And the reason, and the testimony was clear and consistent with that letter with regard to what made Exhibit 145 not be a machine gun and what made Exhibit 12 a machine gun and how the two were able to be distinguished. And the defendant's testimony and his statement show that he was able to distinguish them as well. And so the fact that the defendant doesn't want the statute to apply to this particular machine gun doesn't make the statute vague. Well, counsel said the government agrees it's not an objective standard for design to shoot. Do you agree with that? I don't agree with that, and I'm not sure what led to that interpretation. But I do believe that it is a, it's an objective standard. It's something that can be, that can be tested, that the words have clear meaning. And in this particular case, the defendant designed that receiver. He designed it to be a machine gun receiver. Whether he ever intended to shoot it, shoot a bullet through it, is of no moment. He designed it to function in that capacity. By designing it to function in that capacity, he was able to use it, at least for the purpose that he purported to use it, to test machine gun bolts. Had it not had that capacity, it would have been useless to him in that function. That said, there was certainly evidence that that was not a legitimate purpose. In fact, Officer Swift testified, he himself was a federal license, federal firearms licensee. He was very familiar with the practices and the legitimate business practices. He testified that there was no legitimate use for this machine gun. So the defendant cannot, for business purposes, for conceitedly his intent to make a profit by selling parts, he can't possess and make something that's unlawful just for the fact that it makes his job perhaps easier or allows him to make more profits by doing so. Just whether he never intended to actually fire bullets through that machine gun is of no moment. And Your Honor pointed out the distinction here in specifically including receivers of any such weapons. Congress intended the statute to apply to not just fully assembled machine guns, but for the receivers of those items as well. And it was uncontroverted that that was, in fact, a receiver and that it did, in fact, shoot as a machine gun and was designed to shoot as a machine gun. And the defendant himself explained having designed it and how he and co-defendant Sink were able to make that modification. He doesn't say he designed it as machine gun. He says he designed it as a shop tool. He was just going to use it for certain purposes. Correct. Why is that an incorrect, in your view, reading of the phrase designed to shoot? Because whether he, again, whether he intended to shoot it in that capacity, he designed it to be, to function as a machine gun. And he said when, in his statement, when he was questioned by Special Agent Tisch in his recording statement, he says, as it sits right now, yeah, it will function as a machine gun. For him to be able to- But he may have been aware of that, but that's not what he designed it for. So how does it fit the definition? Because the definition does not say that the person must, there's no intent requirement of intending to shoot. He designed it to be a weapon that had the capability of shooting. What's the mens rea here? The mens rea is knowingly, and clearly that was met. The defendant knew he possessed this item, and he knew it functioned as a machine gun. And those are the two knowing components that the government had to prove. That evidence was uncontroverted. He stated that in his statement. He testified to that. And so he certainly had that knowledge. The government never has to prove that the defendant intended to shoot it, that he intended to do anything with that at all, that he intended to do any more than have it sit on his shelf as he did. And so I think it's a bit of a red herring, all this focus on whether or not he designed it, what his intent was when he designed it. Because the fact of the matter is, when we really boil it down, it's very simple. The defendant knew about the weapon, he possessed the weapon, and he knew that it functioned as a machine gun. And those are really all the elements the government was required to prove. And it was, in fact, a machine gun. We have that testimony. Those are all the elements the government was required to prove. Whether or not we accept the defendant's story about a shop tool is really of no moment, because either way, those elements, the evidence was clear and overwhelming, I would submit, on all of those elements. So did the jury instructions adequately instruct the jury on how to evaluate whether it was designed to shoot? Your Honor, I believe that they did. I would first of all point out that that portion, the first paragraph of the jury instruction was this Court's model jury instruction. The second portion was added at the defendant's request. So this Court has to review for plain error, because the defendant actually requested the addition of those instructions. So you don't take the position that it's invited error that isn't considered at all, but rather that we should look at it as plain error? Yes, Your Honor. But in any event, the defendant wasn't prejudiced here, because we have, by this definition, because, again, we have the clear testimony that it met the shoots definition. The fire enforcement officer actually tested it, and it did, in fact, shoot. And we have the evidence that it did have those design functions, as the defendant and co-defendant Sink had made that modification. Do you think the instruction was wrong on designed to shoot? No, Your Honor. I don't believe it was a misstatement of the law. I think it was a . . . I don't think it was a misstatement of the law. I . . . It was consistent with ATF rulings. It was actually language taken from those rulings. The defense now, I guess in a remorse from having picked that language because it didn't work out well for him, now makes a lot of hay trying to find fault with the ATF rulings. But it was he himself who proffered this addition to the jury instruction. So there's no authority saying that anything in this instruction is incorrect. It simply wasn't a theory that worked out for the defense, and now he is complaining of it. And I don't believe that in any event he's met his burden of showing that he was prejudiced by it. Do you agree on the double jeopardy issue that we should leave for the district court the decision which count to vacate? I do, Your Honor. And I believe that was our proposal in conceding that it is, in fact, double  And that's why this law tells us that remand to the district court to make the decision of which charge is most appropriate to vacate. On the registration count, why isn't the use of the certificate here a violation of the Confrontation Clause? Your Honor, there are a few things here. First of all, the defendant did not object to introduction of that certificate. And so, again, we . . . Yes, he did. He said that it could come in subject to the objections he'd already made. And the objections he already made were with regard to a discovery motion that he filed. He wanted to discover some audits going back to 1998 of the NFRTR. And he said he wanted somebody on the stand so he could ask about this record system as part of that. He did with regard to the record system, but not with regard to this particular report, the NFRTR finding. Really? If he says he wants someone on the stand to tell me that this is a valid determination of what's in the record system, that isn't a proper preservation of an objection on Confrontation Clause grounds when a certificate says, here it is? Your Honor, that objection, at least from the court standpoint, from the defendant's standpoint, and I believe how it was actually phrased at the at both at trial and in the motion hearing, was that the defense wanted to challenge not the actual NFRTR finding in this, the report in this particular case, but go back to audits down in, we wanted a witness to talk about these audits that dated back to 1998, which the government's position in the court affirmed that those were irrelevant to the finding in this particular case. And in any event, the defendant himself testified that he had made this weapon and he had not registered it. And so the evidence was uncontroverted that the, that in this particular case, even if there were some faults with the NFRTR dating back, you know, 20 years before this case, that it did not apply here because the evidence of non-registration was clear. It came from the defendant. It was uncontroverted. And we, our position is there's no error for introduction of that certificate because it was merely cumulative as we had all that other evidence. That's why it would be harmless error. But focus on the question whether or not it's a confrontation clause violation to produce a testimonial declaration for purposes of trial and, and explain why that isn't a confrontation clause violation. Your Honor, I, I would concede that if the defendant had objected to it and requested to, to question a witness with regard to that particular certificate, that that would be a confrontation clause violation based on, based on the, the case law. However. So the plain error standard makes a difference there, then, for your argument? It, it would, Your Honor. In any event, we would, we would still take the position that any error was harmless and it, it is our position as well that that wasn't the objection, that, that the defendant did not have a problem with the introduction of that certificate, that his, that his challenge to the NFRTR was one of broad accuracy regarding audits that had taken several years prior. Your Honor, here though, again, going back to, to the, the evidence that, that was not arguably any sort of error, we have the defendant's own statements. The defendant knew that the item functioned as a machine gun. He knew that, that it was not registered. He himself had not registered it. There was no bona fide business purpose or business ownership of this particular firearm. In fact, the evidence was clear that this FFL did not have a license for machine guns, and that was something that we received testimony about, and the defendant clearly had the knowledge of the requisite characteristics of this particular machine gun, but simply did not want the law to apply to him and felt his conduct would be an exception, an exception that is not recognized in the law, and that, and that clearly does not apply in this particular case. That in and of itself does not make the statute vague. The statute is clear. The statute was, was appropriately applied to the defendant, and his dissatisfaction with that does not create a constitutional infirmity with the statute itself. Unless there are any other questions, I see my time is almost up, so. I don't think so. Thank you very much. Thank you. First, with respect to whether Defense Exhibit 145 was a receiver or was not a receiver, I found the reference. It's at ER 422. When the government asks the witness to distinguish between Government's Exhibit 12 and Defense Exhibit 145, it starts with Defense Exhibit 145. And he says, first, I can explain the stamping and why this is classified as a firearm. And as the Court recognizes, it's clearly not a full firearm. It's the receiver of a firearm. So this testimony indicated that the stamping itself was a receiver. And then the witness goes on to explain why, even though it's a receiver, it's not a machine gun receiver. But show me. I'm on page 422. Where does he say it's the stamping's a receiver? It says, first, I can — it's at line 5. I can explain the stamping and why this is classified as a firearm. And as the Court noticed earlier, that this definition of firearm must mean receiver. Well, I agree that it doesn't seem to be a firearm. But he doesn't explain that he's saying firearm because it's receiver. He then seems to go on in the remaining paragraph to say it's not a receiver. It's internally inconsistent. Actually, he — it goes on to explain why it's not a machine gun receiver. He's not explaining that it's not a receiver. He says it's a — he explains why it's not a machine gun receiver. It says at line 13, this also has four holes similar, blah, blah, blah, which is required by ATF so the item will not be classified as a machine gun. So he's — He also makes clear that it's missing a trunnion. Yes. I swear in his testimony he says trunnion is part of what you have to have to be a receiver, doesn't he? But he also, later on when he's talking about Government's Exhibit 12, he said if you took everything off, if you took everything off and all you had was the metal channel, this would still be a machine gun. So it's sort of like no matter what you do with Defense Exhibit 145, it's not a machine gun. And no matter what you do with Government's Exhibit 12, it is a machine gun. And so if it's that inconsistent, and even the ATF cannot clarify for three judges and for me what makes something a machine gun or not, I do think it's void for vagueness. But you're not challenging the term frame or receiver as unconstitutionally vague. You said earlier that the only phrase you're challenging is designed to shoot. That's correct. Yes. Now — All this confusion in his testimony relates to his use of the term firearm on frame or receiver. It doesn't really go to the issue you're raising. I think it does, because where we got off on this track was whether or not Government's Exhibit 12 met the other definition, which is to shoot automatically, whether it was something that shot automatically. And if it was a machine gun because it was the receiver of a weapon that shot automatically, then Defense Exhibit 145 was also. That's the point, is that if you say, well, if you put all this other stuff on it, it will shoot automatically. The same is true of every single Uzi carbine. If you assemble it and it doesn't have a bolt blocking bar, it will shoot automatically. Defense Exhibit 145 was an Uzi carbine. It didn't have a bolt blocking bar. It would have shot automatically. It's simply vague to say one is a machine gun and one isn't. Why? Because the ATF has said so, basically. There's no other reason for it. There's no way to distinguish these two based on the law. It's just that the ATF has announced it, and not in full dress regulation, in these kind of letter rulings that they give to people. And so in this case, they gave one to D&D sales in March of 2005, saying, yes, it is a machine gun. So it's not just, it is a receiver, it is a firearm, and it is a machine gun. And then six months later, they say, well, actually, it's not a machine gun. So if the ATF itself cannot determine whether something is a machine gun or not under the design definition, how is that not void for vagueness? I see that I'm up. Yes. On that note, thank you. The matter is submitted at this time. Thank you very much, counsel.
judges: Paez, Collins, Choe-Groves